UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROBERT ALDRICH,
             Plaintiff,

        v.                          Civil Action No. 13-11405-DPW

KAREN CONSIDINE, ET AL.,
             Defendants.

MEMORANDUM AND ORDER
August 29, 2013

WOODLOCK, D.J.

I.   Introduction

     On June 6, 2013, plaintiff Robert Aldrich ("Aldrich"), a
prisoner in custody at MCI Shirley, in Shirley, Massachusetts,
filed a self-prepared civil rights action alleging violations of
his constitutional rights pursuant to 42 U.S.C. § 1983 against
Middlesex Superior Court Judge Christopher Muse ("Judge Muse");
Karen Considine ("Considine"); the Official Court Reporter; and
Assistant District Attorney Kevin Curtin ("Curtin").[1]  The matter
stems from matters occurring in Aldrich's 2008 criminal case in
the Middlesex Superior Court.

     Specifically, Aldrich complains of actions taken by Judge

_____

     [1]Aldrich is a frequent filer of civil actions in this Court.
*See Aldrich v. Sanfilippo, et al.*, Civil Action No. 06-10717-NMG;
*Aldrich v. Town of Brookline, et al.*, Civil Action No. 06-10950-
GAO; *Aldrich v. Breen, et al.*, Civil Action No. 09-10352-WGY;
*Aldrich v. Herb Chambers, Inc., et al.*, Civil Action No. 09-
11135-NMG; *Aldrich v. Town of Milton, et al.*, Civil Action No.
09-11282-WGY; *Aldrich v. DiPaola, et al.*, Civil Action No. 09-
11513-EFH; *Aldrich v. City of Cambridge et al.*, Civil Action No.
12-12273-RGS; *Aldrich v. MacEachern*, Civil Action No. 11-10687-
WGY; *Aldrich v. City of Cambridge, et al.*, Civil Action No. 12-
12273-RGS; *Aldrich v. Ruano*, Civil Action No. 13-10754-WGY; and
*Aldrich v. Young*, Civil Action No. 13-10466-DPW.

Muse in connection with bail issues (*i.e.*, denial of bail, subsequent modification of bail, and imposition of restrictive conditions of release).  He also complains of actions taken by Judge Muse in connection with pretrial proceedings, his jury trial, and post-verdict matters.  In addition to these claims, Aldrich complains of improper actions taken by both the court reporter and the prosecutor in connection with the official transcript concerning the jury's verdict as stated in open court.

More specifically, Aldrich contends that on January 6, 2008, he was indicted and subsequently arraigned in Middlesex Superior Court for burglary and related property crimes.  *See Commonwealth v. Aldrich*, Case No. 2008-00164.  Thereafter, he was permitted to proceed *pro se* in that criminal matter, and appeared before Judge Muse in connection with various pretrial motions.  He claims that Judge Muse did not like the fact that he was proceeding *pro se*, and that he routinely made disparaging remarks against his character in open court.  During several court proceedings, the friction between them became so heated that Aldrich claims he accused Judge Muse of abusing his authority and acting impermissibly by assuming the role of both prosecutor and judge.  Additionally, Aldrich contends that Judge Muse denied his request for a reduction in bail on the grounds that Aldrich had open criminal cases pending in the Suffolk Superior Court.

In July, 2008, Aldrich, representing himself *pro se* in two separate trials in the Suffolk Superior Court, was found not

guilty on both matters.  In light of this verdict, in October, 2008, Judge Muse allowed Aldrich a reduction of bail in connection with the criminal case in Middlesex Superior Court. Aldrich claims Judge Muse again made disparaging remarks about his self-representation at that time.

Thereafter, in February, 2009, Aldrich represented himself at a third criminal trial in the Suffolk Superior Court, and he also was found not guilty.  A month later, Judge Muse denied Aldrich's further request for a reduction of bail (based on the third not guilty verdict), stating that Aldrich would "not be so fortunate in this Middlesex case because [he] was 'caught inside the house.'"  Compl. at ¶ 11.  Aldrich accused Judge Muse of unfair treatment simply because he had won three criminal trials as a *pro se* defendant.  He alleged that Judge Muse was not impartial, and that the conversation escalated to the point that Judge Muse threatened to hold Aldrich in contempt of court. Aldrich claims that Judge Muse "reluctantly" reduced Aldrich's bail and imposed a number of conditions of release, including that he wear a GPS electronic bracelet.  *Id.* at 14.  In September, 2009, Aldrich posted bail and was released.

A month later, in October, 2009, Aldrich complained that he was not a sex offender and therefore Judge Muse's order requiring him to wear a GPS electronic bracelet was illegal and offended his constitutional rights as a *pro se* defendant because he was impeded from gathering evidence and preparing his criminal case

for trial, without government monitoring.  Judge Muse denied his motion to remove the GPS bracelet, and threatened to revoke his bail.  Thereafter, in December, 2009, Aldrich appeared for a status conference in preparation for trial.  He asked for permission to interview the Commonwealth's witness, but Judge Muse issued an order that Aldrich had to write letters to the witness, then give them to the prosecutor for review, and then give them to the witness if they chose to speak with Aldrich.  Aldrich vehemently objected to that procedure as violative of his constitutional rights.  Again, Judge Muse threatened to revoke bail.

On December 7, 2009, Judge Muse ordered Aldrich to appear in court a half hour before the hearing, failing which, his bail would be revoked.  Aldrich states this order was made despite the forecast of a snow storm and despite the fact that he had a medical appointment to treat his diabetes.  Aldrich had to rent a vehicle in order to arrive on time to the Court in Woburn, and had to forego his medical appointment.

Next, Aldrich alleges that, during the jury trial, Judge Muse admonished and belittled him by constantly arguing the government's case upon Aldrich's objections.  At the close of the government's case, Aldrich intended to call witnesses on his behalf, and asked Judge Muse for a short recess in order to locate his summoned witnesses.  This request was refused, and a heated argument occurred at sidebar.  Judge Muse refused to allow

4

his witnesses to present evidence, and told the jury that the defense had rested, over Aldrich's objections.

Further, Aldrich alleges that Judge Muse erroneously told the jury that the charges against Aldrich were armed robbery, robbery, and <u>armed</u> burglary (not unarmed burglary).  On December 15, 2009, the jury returned a guilty verdict against Aldrich for armed burglary.  Aldrich contends this was a charge that was never indicted or tried.  At a subsequent "habitual offender" hearing, Aldrich was sentence to 20 years imprisonment.

With respect to Considine, Aldrich alleges she is an official court reporter who reports through a "voice writer" and converts her recorded tapes into written, certified transcripts. She was the reporter who recorded Aldrich's pretrial proceedings. Aldrich obtained her transcripts of the trial, which confirmed that the jury returned a guilty verdict for "armed burglary" upon the clerk's inquiry.  <u>Id.</u> at 35.

Based on the argument that he was convicted of crime that was never indicted or charged, Aldrich filed a Motion to Vacate Unlawful Conviction for the armed burglary.  Curtin was assigned as the appellate attorney for the Commonwealth.  Aldrich contends that Curtin and Considine "secretly met" and listened to the unofficial voice recording made by Considine at trial.  Aldrich claims that Curtin used his cell phone to record a portion of that voice recording, including the jury's verdict, and later made an audio CD of the cell phone recording.  Curtin claimed

that he and Considine heard the clerk state the charge as <u>unarmed</u> <u>burglary</u> not "armed burglary" as certified in the official transcript.

Curtin then filed a Motion to Correct the Record, attaching the CD he made from the cell phone recording. Aldrich contends that Considine acted in violation of her duties as an official court reporter because she allowed Curtin to listen to the unofficial voice recording without a court order. He also contends that Curtin acted outside the scope of his duties as an Assistant District Attorney when he wrongfully accessed the court reporter's voice recording without prior court authorization.

Judge Muse held an *ex parte* hearing on Curtin's Motion to Correct the Record. Considine did not appear at that hearing nor did she provide an affidavit stating her view as to whether the official transcript was in error. Thereafter, Judge Muse denied Aldrich's Motion to Vacate Unlawful Armed Burglary Conviction, as having no factual basis, and allowed the Motion to Correct the Record.

Aldrich alleges that Judge Muse violated his constitutional rights by "changing the jury's guilty verdict for the uncharged crime of 'armed burglary' to unarmed burglary." *Id.* at 48. He further alleges that Judge Muse acted outside the scope of his authority as a judge, acted unconstitutionally and unlawfully, and acted in concert with Curtin to "cover up" and keep Aldrich falsely imprisoned on an uncharged crime, causing him to suffer

emotional distress.

As relief, Aldrich seeks, *inter alia*: (1) a declaratory judgment that the defendants' acts violated his state and federal constitutional rights; (2) a preliminary and permanent injunction ordering Considine to comply with her duties and cease the release of unofficial court recordings without a court order; (3) a preliminary and permanent injunction ordering Curtin to comply with his duties as an Assistant District Attorney and cease accessing and recording the room recordings of the court reporter without authorization; (4) a preliminary and permanent injunction ordering Judge Muse to comply with his judicial duties and cease changing the official trial transcripts; (5) a preliminary and permanent injunction ordering Considine to delete and destroy any and all room recordings made in his criminal case; and (6) an award of compensatory and punitive damages.

Along with the Complaint, Aldrich filed a Motion for Leave to Proceed *in forma pauperis* (Docket No. 2) accompanied by his prison account statement, a Motion for Leave to Effectuate Service of Process by United States Marshal and to Waive Fees/Costs (Docket No. 3), a Motion for Appointment of Counsel (Docket No. 4), a "Request for hearing and Petition for Issuance of a Writ of Habeas Corpus Ad Testificandum to Bring Plaintiff Before the Court for Show Cause Hearing For a Preliminary Injunction and Temporary Restraining Order" (Docket No. 5), along with a Proposed Order to Show Cause for a Preliminary Injunction

and a Temporary Restraining Order.

On August 8, 2013, Aldrich filed a "Motion Requesting Procedural Order to Proceed In Forma Pauperis and Service of Process" (Docket No. 10), and a "Motion Requesting Three Summonses and Approval to Effectuate Service of Process Through US Marshal" (Docket No. 11).

II.  <u>Discussion</u>

A.  <u>The Motion for Leave to Proceed *In Forma Pauperis*</u>

Upon review of Aldrich's financial disclosures in his *in forma pauperis* motion and his prison account statement, I will <u>ALLOW</u> his Motion for Leave to Proceed *in forma pauperis* (Docket No. 2).  To the extent that Aldrich's Motion Requesting Procedural Order to Proceed In Forma Pauperis and Service of Process" (Docket No. 10) seeks *in forma pauperis* status, I will <u>ALLOW</u> that motion as well in light of the allowance of the Motion for Leave to Proceed *in forma pauperis*; otherwise the motion will be <u>DENIED</u>.

Because Aldrich is a prisoner, however, he is obligated to make payments toward the filing fee pursuant to 28 U.S.C. § 1915(b).

In light of this, it is hereby Ordered that:

1.  Plaintiff Robert Aldrich is assessed  an initial partial filing fee of <u>$30.01</u>, pursuant to 28

U.S.C. § 1915(b)(1)(A);[2] and

2.     The remainder of the fee <u>$319.99</u> is to be assessed

and collected in accordance with 28 U.S.C.

§ 1915(b)(2).

This assessment is made apart from any other assessments made in other civil actions filed by Aldrich; however, because Aldrich is a frequent filer, for purposes of clarification for crediting any funds received, and to facilitate proper record-keeping by the Treasurer's Office at MCI Shirley and by the Clerk's Office Accounting Department, I intend that any funds received from Aldrich's prison account first be applied to any prior Order of a Court assessing a filing fee pursuant to 28 U.S.C. § 1915.[3]

---

[2]This assessment was based on a manual calculation of the average monthly deposits over a six-month period based on the prison account information submitted by Aldrich.  This assessment is without prejudice to his seeking reconsideration provided he submits an alternative calculation based on credible evidence in accordance with 28 U.S.C. § 1915(b).  This assessment is also made notwithstanding that Aldrich presently may not have sufficient funds to pay the initial partial assessment; the *in forma pauperis* statute provides for assessment at the time of filing of the action, but collection "when funds exist."  28 U.S.C. § 1915(b)(1).

[3]In other words, Aldrich's filing fee obligation in this action shall be collected consecutively and not simultaneously with any prior filing fee obligation imposed by any court.  *See Ruston v. NBC Television*, USCA No. 06-4672-cv (2d Cir. 2009) *citing Whitfield v. Scully*, 241 F.3d 264, 277 (2d Cir. 2001). *See also Lafauci v. Cunningham*, 139 F. Supp. 2d 144, 147 (D. Mass. 2001)(reviewing decisions of the courts of appeals for the Second, Seventh, and District of Columbia circuits, and indicating that "the simultaneous collection of filing fees from

B.    <u>Screening of the Complaint</u>

Because Aldrich is a prisoner, he is subject to the
provisions of the Prison Litigation Reform Act ("PLRA"), Title
VIII of Pub.L. 104-134, 110 Stat. 1321-1375 (1996).  The PLRA
enacted several provisions which grant this Court the authority
to screen and dismiss prisoner complaints.  *See* 28 U.S.C. § 1915
(proceedings *in forma pauperis*); 28 U.S.C. § 1915A (screening of
suits against governmental officers and entities).

Section 1915 authorizes federal courts to dismiss actions in
which a plaintiff seeks to proceed without prepayment of fees if
the action lacks an arguable basis either in law or in fact,
*Neitzke v. Williams*, 490 U.S. 319, 325 (1989), or if the action
fails to state a claim upon which relief may be granted or seeks
monetary relief against a defendant who is immune from such
relief.  *See* 28 U.S.C. § 1915(e)(2)(ii) and (iii).  *In forma
pauperis* complaints may be dismissed *sua sponte* and without
notice under § 1915 if the claim is based on an indisputably
meritless legal theory or factual allegations that are clearly
baseless.  *Neitzke*, 490 U.S. at 327-328; *Denton v. Hernandez*, 504
U.S. 25, 32-33 (1992).

Section 1915A also authorizes the Court to review prisoner
complaints in civil actions in which a prisoner seeks redress
from a governmental entity, or officers or employees of a
governmental entity, and to dismiss the action regardless of

---

indigent prisoners may raise serious constitutional concerns").

whether or not the plaintiff has paid the filing fee, if the complaint lacks an arguable basis in law or fact, fails to state a claim, or seeks relief from a defendant immune from such relief.  28 U.S.C. § 1915A.

In connection with the preliminary screening, Aldrich's *pro se* Complaint is construed generously.  *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Instituto de Educacion Universal Corp. v. U.S. Dept. of Education,* 209 F.3d 18, 23 (1st Cir. 2000).  However, even under a broad reading, I will <u>DISMISS</u> this case for the various reasons set forth below.

C.    <u>Absolute Judicial Immunity Bars Claims Against Judge Muse</u>

Aldrich's § 1983 claims against Judge Muse must be dismissed because he is entitled to absolute judicial immunity.  *Mireless v. Waco*, 502 U.S. 9, 11 (1991) (*per curiam*).  In *Mireless*, the U.S. Supreme Court has stated that "judicial immunity is an immunity from suit, not just from the ultimate assessment of damages."  *Id.* (other citations omitted).

Most recently, the United States Court of Appeals for the First Circuit addressed the scope of absolute judicial immunity.  *See Goldstein v. Galvin*, 2013 WL 2466861 (1st Cir. June 10, 2013).  In *Goldstein*, the Court stated:

> Absolute immunity applies to a narrow swath of public officials, including "judges performing judicial acts within their jurisdiction," "prosecutors performing acts intimately associated with the judicial phase of the criminal process," and agency officials with

functions similar to judges and/or prosecutors. *Bettencourt v. Bd. of Regist. in Med. of Mass.*, 904 F.2d 772, 782 (1st Cir.1990) (internal quotation marks omitted); *see Butz v. Economou*, 438 U.S. 478, 508–17, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). The protection afforded by an absolute immunity endures even if the official "acted maliciously and corruptly" in exercising his judicial or prosecutorial functions. *Wang*, 55 F.3d at 702 (internal quotation marks omitted). It likewise endures "in the presence of 'grave procedural errors.' " *Nystedt v. Nigro*, 700 F.3d 25, 32 (1st Cir.2012) (quoting *Stump v. Sparkman*, 435 U.S. 349, 359, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)). The imperviousness of this protection is no accident: "[a]lthough this concept of absolute immunity allows some abuses of official power to go unredressed, it is necessary for the effective administration of government that government workers be able to perform their jobs without fear of liability." *Ricci v. Key Bancshares of Me., Inc.*, 768 F.2d 456, 462 (1st Cir. 1985).

*Id.* at *4. Further, *Goldstein* stated:

An inquiry into the existence vel non of judicial immunity encompasses three questions. First, we ask whether the defendant carries out traditional adjudicatory functions. *See Bettencourt*, 904 F.2d at 783. If so, we ask whether the defendant is called upon to decide cases that are "sufficiently controversial that, in the absence of absolute immunity, he would be subject to numerous damages actions." *Id.* If the answers to these two queries are affirmative, we then ask whether the defendant performs his adjudicatory functions "against a backdrop of multiple safeguards designed to protect [the plaintiff's] constitutional rights." *Id.*....Judicial acts are those that are 'intimately associated' with the judicial function." *Nystedt*, 700 F.3d at 31 (quoting *Burns*, 500 U.S. at 486). The bedrock judicial function is, of course, the adjudication of disputes. *Id.* Other traditional judicial functions include such things as "weighing evidence, making factual findings, reaching legal determinations, choosing sanctions, and expounding reasons for [ ] decisions." *Coggeshall*, 604 F.3d at 663.

*Id.* at *5.

12

Here, all of the wrongful acts complained of were taken by
Judge Muse in his judicial capacity and were acts normally
performed by a judge within the scope of his jurisdiction.  Thus,
notwithstanding any allegations of malice, prejudice, bias
against *pro se* litigants, negligence or other bad faith acts in
connection with Judge Muse's rulings, I find that he is immune
from suit.  *See Pierson v. Ray*, 386 U.S. 547, 553-554(1967)
(absolute judicial immunity protects integrity of judicial
process); *Allard v. Estes*, 197 N.E. 884, 886 (1935)(stating that
it is "too well settled to require discussion, that every judge,
whether of a higher or lower court, is exempt from liability to
an action for any judgment or decision rendered in the exercise
of jurisdiction vested in him by law.").[4]

The reason for recognizing this form of immunity is that:

> [T]he nature of the adjudicative function requires a
> judge frequently to disappoint some of the most intense
> and ungovernable desires that people can have....
> [T]his is the principal characteristic that
> adjudication has in common with legislation and with
> criminal prosecution, which are the two other areas in
> which absolute immunity has most generously been

---

[4]I note that Aldrich has alleged that Judge Muse conspired
with Curtin to deny him due process.  This is a bald allegation
or legal conclusion without any underlying facts whatsoever set
forth to support such a claim, and I need not credit it.
Allegations that the state court judge agreed with the adverse
side does not permit an inference of an agreement to deprive him
a litigant of his rights.  *See Frierson-Harris v. Kall*, 2006 WL
2373231, at *1 (7th Cir. 2006)("... judges generally 'agree' with
one side in litigation when ruling against the other; such
agreements are not corruptions of the judicial process")(not
selected for publication).

> provided.  If judges were personally liable for
> erroneous decisions, the resulting avalanche of suits,
> most of them frivolous but vexatious, would provide
> powerful incentives for judges to avoid rendering
> decisions likely to provoke such suits.  The resulting
> timidity would be hard to detect or control, and it
> would manifestly detract from independent and impartial
> adjudication.

*Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 768 (3d

Cir. 2000)(quoting *Forrester v. White*, 484 U.S. 219, 226-27

(1988)).

Although Aldrich alleges that Judge Muse acted outside the

scope of his authority, that allegation is insufficient to

overcome absolute judicial immunity.  It is clear that all of

Aldrich's complaints (*i.e.*, denial of bail, imposition of

electronic bracelet as a condition of release, refusal to permit

him to present witnesses, denial of his motion to vacate, and

other actions taken during court proceedings) were within the

scope of Judge Muse's judicial authority.  The allegations that

he acted as both a judge and a prosecutor during the criminal

proceedings are not the type of extrajudicial activity that would

undermine the immunity doctrine.  Moreover, the First Circuit has

stated: ["...we have decided, time and again, that officials who

exercise both judicial and prosecutorial functions may

nonetheless be entitled to absolute immunity." *Goldstein*, 2013

WL 2466861 at *7.

Of particular note here is that Aldrich was well aware of

the absolute judicial immunity doctrine.  In *Aldrich v. Judge

Young*, Civil Action No. 13-10466-DPW, the United States, on

14

behalf of District Judge William G. Young, filed a Memorandum in Support of a Motion to Dismiss, discussing the doctrine. *See* Memorandum in Support (Docket No. 5 at 6-7). In response, only three weeks <u>prior</u> to the filing of this lawsuit, Aldrich filed an Opposition and Partial Assent (Docket No. 12) conceding that absolute judicial immunity barred his claim for monetary damages. In light of this, Aldrich's good faith in asserting the claim against Judge Muse is questionable.

I recognize that in the case before Judge Young, Aldrich interposed the argument that he would be entitled to declaratory relief notwithstanding that absolute judicial immunity barred the monetary damages claims. However, except in limited circumstances not applicable here, the doctrine bars suits against judges, regardless of the relief sought. Moreover, a Declaratory Judgment is not a separate not a substantive source of rights; rather, the "operation of Declaratory Judgment Act is procedural only." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)(citation omitted); *see Akins v. Penobscot Nation*, 130 F.3d 482, 490 n. 9 (1st Cir. 1997)(Declaratory Judgment Act does not, by itself, create a substantive cause of action). For the reasons set forth herein, Aldrich fails to set forth cognizable § 1983 due process claims, and therefore cannot obtain declaratory relief.

Further, there is no equitable basis for the grant of declaratory relief against a judge (or any of the defendants for

that matter), where Aldrich does not seek prospective relief.
The acts of which he complains have already occurred, and he
seeks a declaration that the defendants violated his
constitutional rights (in the past). *See Clay v. Osteen*, 2010 WL
4116882 (M.D.N.C. 2010).[5]  Declaratory relief applies only to
prospective relief, to define legal rights in connection with
<u>future</u> conduct. *Id.  See Willner v. Frey*, 421 F. Supp. 2d 913
(E.D. Va. 2006), *aff'd* 243 Fed. Appx. 744 (4th Cir. 2007), *cert.
denied* 128 S.Ct. 1125 (2008); *Abebe v. Seymour*, 2012 WL 1130667
(D.S.C. 2012), *aff'd* 479 Fed. Appx. 464, *2 (4th Cir. 2012)
(denying injunctive relief based on alleged wrongs occurring in
prior cases before a judge, stating: "[a] declaratory judgment is
meant to define the legal rights and obligations of the parties
in anticipation of some future conduct, not simply to proclaim
liability for a past act." quoting *Lawrence v. Kuenhold*, 271 F.

---

[5]In rejecting a request for declaratory relief against a
judge, *Clay* stated:

> "Declaratory judgments... are meant to define the legal
> rights and obligations of the parties in anticipation
> of some future conduct." *Johnson v. McCuskey*, 72 Fed.
> Appx. 475, 477 (7th Cir. 2003) (holding that
> declaratory relief was improper where Plaintiff merely
> sought a declaration that Defendants had acted
> improperly when deciding a change of venue motion).
> They are not "meant simply to proclaim that one party
> is liable to another." <u>Id.</u> at 478.  Plaintiffs'
> request for declaratory relief merely seeks to strip
> Defendants of judicial immunity and thereby impose
> liability.  As such, Plaintiffs are not entitled to
> declaratory relief.

*Clay*, 2010 WL 4116882 at *4.  Such is the case here.

App'x 763, 766 (10th Cir. 2008))("[d]eclaratory judgments are designed to declare rights so that parties can conform their conduct to avoid future litigation, and are untimely if the questionable conduct has already occurred or damages have already accrued.").

As an additional matter, Aldrich's general request for injunctive relief in the form of an Order directing the Defendants to do their jobs properly in the future, and his request for an Order directing defendants to correct records pertaining to his criminal case, are insufficient to entitle him to declaratory relief.  Further, even if Aldrich could pursue a claim for declaratory relief, such claim fails on the merits, and under my broad discretion, would be denied.  *See DeNovellis v. Shalala*, 124 F.3d 298, 313 (1st Cir. 1997).  In *DeNovellis*, the United States Court of Appeals for the First Circuit stated, in relevant part:

> The Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant"; courts have broad discretion to decline to enter a declaratory judgment. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287, 115 S.Ct. 2137, 2142-43, 132 L.Ed.2d 214 (1995) (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952)). "By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, ... to dismiss an action seeking a declaratory judgment before trial." *Wilton*, 515 U.S. at 288, 115 S.Ct. at 2143....In the declaratory

> judgment context, the normal principle that federal
> courts should adjudicate claims within their
> jurisdiction yields to considerations of practicality
> and wise judicial administration." *Wilton*, 515 U.S. at
> 288, 115 S.Ct. at 2143.

*DeNovellis,* 124 F.3d at 313.  Finally, it appears that Aldrich's

attempt to obtain declaratory relief may, at least in part, be

designed to serve as a basis for him to seek vacation of the

rulings of Judge Muse and overturn his criminal conviction.[6]

This is improper; the method to challenge allegedly wrongful

criminal conviction is through a direct appeal, a habeas

petition, and/or other post-conviction motions, not through a

civil action against the judge, the prosecutor, and court staff.

       Accordingly, Aldrich's claims against Judge Muse will be

<u>DISMISSED</u> pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii).

       D.    <u>Absolute Prosecutorial Immunity Bars Claims Against
             Assistant District Attorney Curtin</u>

       Similarly, Aldrich's § 1983 claims against Curtin also must

be dismissed because prosecutors are entitled to absolute

prosecutorial immunity when they engage in activities that are

"intimately associated with the judicial phase of the criminal

process."  *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *Reid v.

State of New Hampshire*, 56 F.3d 332, 337 (1st Cir. 1995).

Conduct falling within this category is not limited to conduct

occurring in the courtroom.  It includes actions where

_____

       [6]Indeed, I cannot discern any other basis for the request
for declaratory relief against these defendants.

prosecutors are acting "in the course of [their] role as an advocate for the State," including "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial ...." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

In *Goldstein, supra*, the First Circuit also addressed absolute prosecutorial immunity, stating: "[t]he baseline rule is that a state official who performs prosecutorial functions ... is absolutely immune from damages actions." *Goldstein*, 2013 WL 2466861 at *6 (citations omitted).  Such immunity applies not only to "[t]he duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution [but to] actions apart from the courtroom ." *Id.* at *7 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 431 n. 33, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)).

Although Aldrich alleges that Curtin exceeded the scope of his authority as a prosecutor by listening to the unofficial voice recordings and filing a Motion to Correct the Record, there can be no serious contention that this conduct was not intimately connected to his duties as a prosecutor in acting to maintain the integrity and finality of the criminal conviction by a jury. Thus, even if Curtin misled the court or acted wrongfully in listening to the voice recordings without court permission, or in filing a Motion to Correct the Record without a supporting

19

Affidavit of Considine, it simply is beyond question that one duty of a prosecutor is to advocate for the government to protect the finality of a criminal conviction.  It is also beyond question that Curtin's conduct occurred directly in connection with, or stemming from, Aldrich's post-conviction Motion to Vacate the conviction.  In short, Curtin's actions were intimately associated with the criminal process, and he is entitled to prosecutorial immunity no matter how he allegedly acted improperly.

Again, Aldrich was aware of this doctrine prior to filing this lawsuit.  *See Aldrich v. City of Cambridge, et al.*, Memorandum and Order (Docket No. 18).  While Judge Stearns ultimately permitted the case to proceed, he noted in an Electronic Order (Docket No. 24) that the issue of prosecutorial immunity was a matter to be briefed by the parties at a later time.  In that action, Aldrich alleges that the prosecutor engaged in a cover up for wrongful conduct of a police officer, by presenting oppositions in court that challenged Aldrich's version of events.

Curtin's actions are clearer than in Aldrich's other lawsuit, and thus no opportunity to show cause why this case should not be dismissed need be given.  Accordingly, I will DISMISS the claims against pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii).

E.    Quasi-Judicial Immunity As a Bar to Claims Against
      Court Reporter Considine

Employees of a court, including court reporters, have
quasi-absolute judicial immunity when they perform tasks that are
an integral part of the judicial process.  *See Book v. Dunlavey*,
2009 WL 891880, *4 (W.D. Pa. 2009) *citing Gallas v. Supreme Court
of Pennsylvania*, 211 F.3d 760, 772-73 (3d Cir. 2000) (deputy
court administrator); *Mullis v. United States Bankr. Court for
the Dist. of Nevada*, 828 F.2d 1385, 1390 (9th Cir. 1987) (clerks
and deputy clerks).  *Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir.
1992)(quasi-judicial immunity applied to court support personnel
because of "the danger that disappointed litigants, blocked by
the doctrine of absolute immunity from suing the judge directly,
will vent their wrath on clerks, court reporters, and other
judicial adjuncts").  Where the question of accuracy of a
transcript is raised, as in Aldrich's criminal case, a court
reporter's action in taking steps to permit a party to challenge
the accuracy is arguably a proper effort to maintain the
integrity of the judicial process.  Thus, even though there may
not have been a court order permitting the release to Curtin of
such recording for listening (and comparing the audio to the
written transcript), such action, however allegedly wrongful that
may be, would not overcome the quasi-immunity of the court

21

reporter.[7]

In any event, even if Considine were not entitled to quasi-judicial immunity, Aldrich's actions still are barred under the Favorable Termination Rule, discussed below.

F.   Plaintiff's Claims are Barred By The Favorable
     Termination Rule

Here, Aldrich has indicated that his Motion to Vacate his conviction was denied by Judge Muse.   While he does not indicate the status of his conviction, upon information from the Massachusetts Appeals Court, Aldrich currently has a pending appeal. *See Com. v. Aldrich*, No. 2012-P-787.   The appeal has been stayed until July 8, 2013 pending a status report regarding an appeal of the denial of Aldrich's Motion for a New Trial (in

---

[7]Notably, the Federal Court Reporter Act, 28 U.S.C. § 753(b), ¶ 6 provides that "[t]he original notes or other original records and the copy of the transcript in the office of the clerk shall be open during office hours to inspection by any person without charge. *Id.* Further, the Court Reporter's Manual, Volume 6, Chapter 16, § 16.5.4 provides that: "Back up tapes made by court reporters for their own convenience and not otherwise required by 28 U.S. C. § 753 are the personal property of the court reporters.   There is no public entitlement to these recordings, with the exception of recordings of arraignments, changes of plea, and sentencings which are covered in section 16.5.1." *Id.*   Massachusetts apparently does not have a similar requirement. *See Com. v. Winfield*, 464 Mass. 672, 680, 985 N.E.2d 86, 93 (Mass. Mar. 18, 2013)(noting that under Superior Court regulations, "all stenotype tapes, tape recordings and original shorthand notebooks containing any notes of the trial or hearing of a case shall be the property of the court" and stating that a judge has authority "to order the court reporter to provide designated persons with access to the room recording, for instance where the court reporter has failed timely to prepare a transcript or where the recording may be needed to resolve a dispute regarding the accuracy of the transcript.").

which case the appeals may be consolidated).

In view of the fact that Aldrich's conviction has <u>not</u> been vacated or reversed, this § 1983 action must be dismissed, as barred at this time by the Favorable Termination Rule.  It is well-settled that civil rights claims do not accrue unless the prisoner has obtained a "favorable termination" of the underlying conviction, parole, disciplinary action or condition of confinement.  *See Heck v. Humphrey*, 512 U.S. 477 (1994) and its progeny.  Under this rule, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ... or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck*, 512 U.S. at 486-87 (footnote omitted).  Without such a showing of a favorable termination, a prisoner's cause of action has not yet accrued.  *Id.* at 489.

The Favorable Termination Rule has been extended to a wide variety of prisoner challenges where success "would, if established, necessarily imply the invalidity of the deprivation...." *Edwards v. Ballistics*, 520 U.S. 641, 646 (1997).  A purpose of this rule is to focus on the need to

ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement -- either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody.  *Wilkinson v. Dobson*, 544 U.S. 74, 81 (2005). Therefore, a civil rights suit is barred "if success in that action would necessarily demonstrate the invalidity of confinement or its duration."  *Id.* at 81-82.

Here, it is clear that Aldrich's attack on the alleged misconduct of Judge Muse, Assistant District Attorney Curtin, and Court Reporter Considine would necessarily imply the invalidity of his conviction if he were successful.  This is manifest given Aldrich's primary assertion -- that he was unlawfully convicted for a charge for which he was never indicted (*i.e.* armed burglary), and that the record should not have been corrected to indicate the conviction was for unarmed burglary.  Further, Aldrich's claims of bias against him for acting *pro se* during the criminal proceedings, and for denying him the right to call witnesses in his defense, also falls within the purview of *Heck*.

Once again, Aldrich was aware of the Favorable Termination Rule, as discussed in *Aldrich v. City of Cambridge, et al.*, Civil Action No. 12-12273-RGS, Memorandum and Order (Docket No. 11 at 14-15), and thus the good faith in filing the instant action also

is questionable.  Although in that case the claims were permitted
to proceed, the Court noted that the issue of the Favorable
Termination Rule was a matter to be briefed by the parties at a
later time.  *See* Electronic Order (Docket No. 24)(entered April
9, 2013).  That action involved Aldrich's claims against, *inter
alia*, a host of city officials, and police department officials
based on alleged threats and intimation of a police officer,
which threats Aldrich claimed had influenced the outcome of his
criminal trial because he changed his trial strategy in light of
the officer's statements to him.  Those defendants were sued for,
among other things, the failure to train, supervise, discipline,
and investigate a complaint concerning the police officer's
conduct.  Unlike the instant action, those matters did not
directly relate to the criminal proceedings.  Here, however,
where the defendants are being sued directly for actions taken in
connection with the criminal proceedings, application of *Heck* is
manifest, and no further opportunity need be given to Aldrich to
show cause why his claims should not be dismissed.

Accordingly, Aldrich's suit will be dismissed pursuant to 28
U.S.C. § 1915(e)(2)(B)(ii) (failure to state a claim upon which
relief may be granted).

For all the reasons set forth above, I will <u>DISMISS</u> this

action *sua sponte*.[8]

For purposes of application of the three-strikes rule of 28 U.S.C. § 1915(g), I intend this dismissal to be a decision on the merits.

G.   <u>Pending Motions</u>

In light of the *sua sponte* dismissal of this action, Aldrich's Motion for Leave to Effectuate Service of Process by United States Marshal and to Waive Fees/Costs (Docket No. 3), his Motion for Appointment of Counsel (Docket No. 4), and his "Request for hearing and Petition for Issuance of a Writ of Habeas Corpus Ad Testificandum to Bring Plaintiff Before the Court for Show Cause Hearing For a Preliminary Injunction and Temporary Restraining Order" (Docket No. 5) will be <u>DENIED</u> as unfounded.

Additionally, Aldrich's Motion Requesting Three Summonses and Approval to Effectuate Service of Process Through US Marshal

---

[8]In light of the dismissal of this case for the reasons stated herein, this Court need not address an additional bar to Aldrich's claims, presented by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e) providing that "no federal action may be brought by a prisoner .... for mental or emotional injury suffered while in custody, without a prior showing of physical injury." *Id.* There is a split in other circuits as to the application of § 1997e(e) with respect to the availability of monetary damages for a constitutional violation, and/or the availability of nominal or punitive damages (not compensatory damages). The United States Court of Appeals for the First Circuit has not reached the issue, but has intimated that, at the least, nominal and punitive damages would be recoverable in a § 1983 claim. *See Kuperman v. Wrenn,* 645 F.3d 69, 73 n.5 (1st Cir. 2011) .

(Docket No. 11) also will be <u>DENIED</u> as unfounded.

Finally, as noted above, Aldrich's Motion Requesting Procedural Order to Proceed In Forma Pauperis and Service of Process (Docket No. 10) will be <u>ALLOWED</u> to the extent that he may proceed *in forma pauperis*.  The motion will be <u>DENIED</u> to the extent that Aldrich seeks summonses and service of process by the United States Marshal Service.

H.   <u>Certification That Any Appeal Would Not Be Taken in Good Faith</u>

Under 28 U.S.C. § 1915(a)(3) "[an appeal may not be taken in forma pampers if the trial court certifies in writing that it is not taken in good faith." *Id.*  Similarly, under Fed. R. App. P. 24(a)(3)(A), a party who has been permitted to proceed *in forma pampers* in the district court may proceed on appeal *in forma pampers* without further authorization, unless the district court certifies that the appeal is not taken in good faith.  *Id.*

Because I have found Aldrich's claims to be barred by the legal impediments discussed in this Memorandum and Order, any appeal by Aldrich would not be taken in good faith.  "The applicant's good faith is established by the presentation of any issue that is not plainly frivolous." *Ellis v. United States*, 356 U.S. 674, 674 (1958) (*per curia*); *see Lee v. Clinton*, 209 F.3d 1025, 1026 (7th Cir. 2000); *Wooden v. District of Columbia*, 129 F.3d 206, 208 (D.C. Cir. 1997).  A complaint is "frivolous" if "it lacks an arguable basis either in law or in fact."

27

*Nietzke*, 490 U.S. at 325.  Such is the case here.  I find that any appeal would be one that plainly does not deserve additional judicial attention.

Accordingly, I will <u>CERTIFY</u> that any appeal of the rulings contained in this Memorandum and Order would not be taken in good faith.

Should Aldrich seek *in forma pampers* status on an appeal, he must obtain permission to do so directly from the First Circuit Court of Appeals.

<u>CONCLUSION</u>

Based on the foregoing, it is hereby Ordered that:

1.  Plaintiff's Motion for Leave to Proceed *in forma pampers* (Docket No. 2) is <u>ALLOWED</u> and the filing fee is assessed pursuant to 28 U.S.C. § 1915(b);

2.  Plaintiff's "Motion Requesting Procedural Order to Proceed In Forma Pauperis and Service of Process" (Docket No. 10) is <u>ALLOWED</u> only to the extent that plaintiff is permitted to proceed *in forma pauperis*; otherwise, the motion is <u>DENIED</u>;

3.  Plaintiff's Motion for Leave to Effectuate Service of Process by United States Marshal and to Waive Fees/Costs (Docket No. 3) is <u>DENIED</u>;

4.  Plaintiff's "Motion Requesting Three Summonses and Approval to Effectuate Service of Process Through US Marshal" (Docket No. 11) is <u>DENIED</u>;

5.  Plaintiff's Motion for Appointment of Counsel (Docket No. 4) is <u>DENIED</u>;

6.  Plaintiff's "Request for hearing and Petition for Issuance of a Writ of Habeas Corpus Ad Testificandum to Bring Plaintiff Before the Court for Show Cause Hearing For a Preliminary Injunction and Temporary Restraining Order" (Docket No. 5) is <u>DENIED</u>;

28

7.    This action is <u>DISMISSED</u> in its entirety; and

8.    This Court <u>CERTIFIES</u> that any appeal of the rulings in this
      Memorandum and Order would not be taken in good faith.


SO ORDERED.

                                   <u>/s/ Douglas P. Woodlock</u>
                                   DOUGLAS P. WOODCOCK
                                   UNITED STATES DISTRICT JUDGE